IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DEREA** and **MARTIN GREENHAUS**,

    Plaintiffs,

vs.                                    Civil No.     **01-0624 MCA/DJS**

**ALLSTATE INSURANCE COMPANY**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court pursuant to Defendant's *Motion to Dismiss* (Doc. No 10); *Allstate's Motion for Summary Judgment on UM/UIM Stacking, Bad Faith and Statutory Violations Claims* (Doc. No. 50); *Plaintiffs Greenhaus' Motion for Summary Judgment on the Issue of Uninsured Motorist Stacking* (Doc. No. 34); and *Plaintiffs Greenhaus' Motion to Certify to the New Mexico Supreme Court* (Doc. No. 36). The Court, having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, concludes that Defendant is entitled to judgment on all claims except negligence. The Court determines that *Plaintiffs Greenhaus' Motion for Summary Judgment on the Issue of Uninsured Motorist Stacking* and *Plaintiffs Greenhaus' Motion to Certify to the New Mexico Supreme Court* must be **DENIED**.

I.      **FACTUAL BACKGROUND**

The case arises out of an automobile accident that occurred in October 1998. (Compl. ¶ 11). On October 29, 1998, Plaintiff Derea Greenhaus suffered injuries in a motor vehicle collision as a proximate result of the negligence of an under-insured motorist. (IPTR; Stipulated Fact ¶ 6). At that time, Plaintiffs insured their three vehicles with Defendant Allstate Insurance Company. (Id. at ¶ 2). Their automobile insurance policy provided for uninsured or under-insured motorist (UM) coverage limits of $50,000 per person. (Undisputed Facts, Def. Mem. in Supp. Summ. J.¶ 2). Plaintiff Derea Greenhaus settled her claim against the tortfeasor, with Allstate's consent, for the tortfeasor's $25,000 liability policy limits. (IPTR; Stipulated Fact ¶ 6). Plaintiffs' damages were compensable under the Allstate policy, which provided the UM coverage. (Id. at 10). Under its 1997 policy, Defendant limited stacking of UM coverages on two insured vehicles. (Ex. 3 to Sisson Aff.). Plaintiffs contend that they are entitled to stack UM coverage on all three of their vehicles.

At the time of the accident, Plaintiffs' auto policy consisted of the following documents:

> Auto Policy Declarations
> Auto Insurance Policy — AU 130
> Utility Auto Endorsement — AU 2024
> Amendatory Endorsement Form — AU 2207-2
> Important Notice — X5720

Important Notice — X5720 (effective from December 1997) stated that Allstate made some changes to the policy. (Ex. 3 to Sisson Aff. ¶ 7). It explained that Allstate

revised the "Limits of Liability" provision under "Bodily Injury Caused by Uninsured Motorists" . . . .

> If you insure two or more vehicles under this policy, you can now "stack" the limits of Uninsured Motorists Insurance for Bodily Injury for two of the vehicles. For example, if you have two or more vehicles, which are each insured under this policy at $100,000 per accident for this coverage, we will pay up to $200,000 (subject to the "per person" limit) for injuries sustained as the result of an accident with a legally-liable uninsured motorist.

(Id.).

Amendatory Endorsement — AU2207-2 also noted that:

"Bodily Injury Caused by Uninsured Motorists" is replaced by the following:

> The Uninsured Motorists Insurance for Bodily Injury limit stated on the declarations page is the maximum amount payable for this coverage by this policy for any one accident, except when two or more vehicles are insured under this policy, we will stack or aggregate up to two, but no more than two, uninsured motorist insurance for bodily injury coverages under this policy."

(Id.).

Allstate provided separate declarations pages for all three vehicles. The declarations page for each vehicle listed the specific premium amount for that vehicle. However, these documents do not mention the uninsured motorist bodily injury or coverage limits. (Plf's Ex. 3). A separate declarations page was provided for the additional uninsured motorist insurance coverage.

Defendant charges higher amounts of UM coverage premium on multiple vehicles than for a single vehicle. (Undisputed Facts, Plf's. Mem. in Supp. Summ. J. ¶ 15). The

premium for multiple vehicle policy is calculated at 2.47 cars. ( Plf's. Mem. in Supp. Summ. J. ¶ 16-18). However, Defendant applies a twenty-five percent discount on 2.47 and, in the end, Plaintiffs' actual payment is 1.85 times that of a single car. (Zielke Dep. at 76). Defendant's premium on a multiple-vehicle policy did not change with the number of vehicles insured. (Zielke Aff. ¶ 15). The higher premium charged for UM bodily injury coverage for a multiple-car policy is based solely on the increase in loss frequency caused by the fact that more than one vehicle is in use in a multi-car household. (Zielke Aff. ¶ 16). Defendant's policy does not allow stacking of any medical payment coverage.

Plaintiffs filed the instant case in the Eleventh Judicial District Court, County of San Juan, State of New Mexico. Defendant removed the action to federal court based upon diversity jurisdiction. Plaintiffs request declaration of their rights under Defendant's policy. Plaintiffs claim relief for breach of contract, insurance bad faith, unfair trade practices and Insurance Code violations. Plaintiffs further claim relief for intentional infliction of emotional distress and negligence.

Defendants filed a Rule 12 (b)(6) motion on claims relating to stacking of medical payments coverage, intentional infliction of emotional distress, bad faith, statutory violations of unfair trade practice, and insurance code violations. Plaintiffs initially moved to certify the issue of UM stacking to the New Mexico Supreme Court. Plaintiffs later filed a motion for partial summary judgment on the issue of UM coverage. Defendant filed a cross-motion for summary judgment on uninsured or under-insured motorist stacking and a summary judgment motion on bad faith, unfair trade practices, and insurance code violations.

Defendant also requested that summary judgment be granted on all the Rule 12 (b)(6) claims if the Rule 12 (b)(6) motion is not granted. Thus, Defendant moved for summary judgment on all claims, except that of negligence. Accordingly, the Court will treat Defendant's Rule 12 (b)(6) motion as a motion requesting summary judgment and examine the entire record while deciding the issues presented therein.

## II.   DISCUSSION

### A.   Diversity Jurisdiction

Under 28 U.S.C. § 1332, a federal court has jurisdiction if there is complete diversity of citizenship as to all parties, and the amount in controversy exceeds the sum of $75,000, excluding interests and costs. See 28 U.S.C. § 1332 (1994). Every separate and distinct claim must individually meet the amount in controversy. See id. However, in the calculation of the amount in controversy, both compensatory and punitive damages have to be included. See Watson v. Blankinship, 20 F.3d 383, 386 (10th Cir. 1994). Further, where the complaint does not contain dispositive allegations of the amount in controversy, the jurisdictional amount is determined by the allegations in the underlying complaint. See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995).

In the present case, the actual amount in controversy involves $50,000 for UM coverage and $10,000 in medical payments coverage. However, Plaintiffs included unspecified amounts of punitive damages on all the claims individually, and claimed treble damages on the statutory claims. Therefore, the jurisdictional amount is satisfied.

A federal court, sitting in diversity, applies the substantive law of the forum state. See Hanna v. Plumer, 380 U.S. 460, 465 (1965); Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).  In adjudicating issues of state law, the goal of the federal court is to "ascertain and apply [a state's] law with the objective that the result obtained in the federal court should be the result that would be reached in [a state's] court."  Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir. 1994).  If the federal court is not able to ascertain the law of the forum state, it "must in essence sit as a state court and predict how the highest state court would rule."  Id.  Thus, the most recent statement from a state's highest court controls, although federal courts may view decisions from intermediate state appellate courts "as persuasive as to how the state supreme court might rule."  Sellers v. Allstate Ins. Co., 82 F.3d 350, 352 (10th Cir. 1996).

**B.     Standard**

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991).  Accordingly, all well-pleaded factual allegations in the complaint are accepted as

true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384.

"In addition to the complaint, the . . . [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). Thus, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp., 130 F.3d at 1384. The Court "'may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

To the extent that Defendant's motion refers to other material outside of the pleadings, the motion is reviewed as one for summary judgment pursuant to Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b). Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of

law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### C. **Intentional Infliction of Emotional Distress**

Intentional infliction of emotional distress arises when a defendant intentionally or recklessly causes severe emotional distress through extreme and outrageous conduct. See Jaynes v. Strong-Thorne Mortuary, Inc., 1998-NMSC-004 ¶ 18, 124 N.M. 613, 618, 954 P.2d 45, 50 (citing Restatement of Torts § 46 (1965)). "Extreme and outrageous conduct is that which goes beyond bounds of common decency and is atrocious and intolerable to the ordinary person." Rule 13-1628 NMRA 2001. To recover emotional distress damages, those damages must be "severe." Jaynes, 124 N.M. at 618, 954 P.2d at 50. "By 'severe' . . . 'a reasonable person, normally constituted, would be unable to cope adequately with the mental

distress engendered by the circumstances.'" Id. (quoting Folz v. State, 110 N.M. 457, 469, 797 P.2d 246, 254 (1990)). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Dominguez v. Stone, 97 N.M. 211, 215, 638 P.2d 423, 427 (1981). "The intensity and the duration of the distress are factors to be considered in determining its severity." Id. "Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." Id. The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress. See id.

Plaintiffs do not provide any facts relating to their personal emotional distress. They argue that the facts of the present case are so extreme as to cause an average member of the community exclaim "outrageous!" because Defendant is charging the uninsured premium, which includes the average of the third car, but will not allow the stacking of the UM coverage of the third car. (Plfs' Resp. to Def. Mot. to Dismiss at 20). The evidence in the record indicates that Defendant attempted to limit its liability of UM coverage through the contract. Defendant charged a premium roughly equivalent to two vehicles, and Plaintiffs received benefit of stacking on two of their vehicles.

To be sustainable, a claim for outrageous conduct must be based upon an action that is more egregious than either the conduct underlying a bad faith breach of contract claim or a wilful, wanton breach of contract claim. See Munoz v. State Farm Mut. Auto. Ins. Co., 968 P.2d 126, 129 (Colo. Ct. App. 1998). In the present case, Plaintiffs have not met their burden

of bringing forth evidence that Defendant's conduct was extreme or outrageous. Complete emotional tranquility is seldom attainable and some degree of transient and trivial emotional distress is a part of the price of living in society, and such is not compensable. See Dominguez, 97 N.M. at 215. For these reasons, the Court grants Defendant summary judgment on Plaintiffs' emotional distress claim.

### D. Uninsured/Under-Insured Motorist Stacking

Stacking constitutes the aggregation of certain insurance coverages when more than one automobile is covered under a policy. See Lopez v. Found. Reserve Ins. Co., 98 N.M. 166, 646 P.2d 1230 (1982). New Mexico courts have examined the issue of stacking and have established "a strong judicial policy favoring stacking" to enable a person injured by an uninsured or under-insured motorist to receive compensation for his or her damages to the extent of the insurance purchased for his or her protection. Rodriguez v. Windsor Ins. Co., 118 N.M. 127, 879 P.2d 759 (1994). Stacking of uninsured motorist coverage is allowed when separate premiums have been paid, on the rationale that separate premiums for separate coverages entitle the insured to the benefit of what he or she has paid for. See id. at 761 (citing Vigil v. Cal. Cas. Ins. Co., 112 N.M. 67, 71, 811 P.2d 562, 569 (1991)). An insurance company might effectively prevent stacking if it plainly notifies the insured that (1) only one premium has been charged for one coverage; (2) the coverage cannot be stacked regardless of the number of vehicles on the policy; and (3) the insured should bear this feature in mind when buying insurance. See Rodriguez, 118 N.M. at 133, 879 P.2d at 765.

Two cases on substantially similar fact patterns as the present case involve Allstate Insurance Company as the defendant. Both the cases upheld Allstate's limitation provisions. The Tenth Circuit, interpreting Rodriguez, upheld the limitation provision under dispute in the present case. See Allstate Ins. Co. v. Indep. Appliance & Refrigeration Serv., Inc., 278 F.3d 1102, 1106 (10th Cir 2002). Indep. Appliance & Refrigeration Serv., Inc. held that Allstate's 1997 limitation of stacking to two automobiles was valid, as Allstate charged the insured roughly equivalent of two premiums, and the insured was entitled to stack two coverages. See id. It also held that when an insurer did not charge an insured any additional premium to insure a third or fourth car, it would contravene New Mexico public policy to allow the insured to collect additional coverages. See id. In yet another stacking case involving Allstate, the New Mexico Court of Appeals recently concluded that the limitation of stacking, to two vehicles, is legally permissible under Rodriguez. See Montano v. Allstate Indem. Co., 2003-NMCA-066, 133 N.M. 696, 68 P.3d 936.

Plaintiffs argue that Allstate charges more than one premium because it calculates its premium as an average of third and fourth cars. Plaintiffs also contend that Allstate's policy is ambiguous and contradicts itself. Finally, Plaintiffs argue that the policy documentation is unclear, and did not notify them of the stacking limitation.

Plaintiffs assert that Defendant, while determining the premium for multiple cars, adds the amounts for second, third, and fourth cars and, thus, constitutes a multiple-car premium. (Plfs' Mem. in Supp. Summ. J. on UM Stacking at 14-17). In other words, Plaintiffs argue that the multiple-car premium would not be high if third and fourth car policies were not

included in setting the premium. They contend that they should be allowed to stack all their cars because Allstate's premium calculation constitutes multiple-car premiums under the Rodriguez principle. See id. Plaintiffs seem to be arguing that the average figure is fictitious and, in essence, represents a lump sum of separate charges based on each separate vehicle insured in a policy. The New Mexico Court of Appeals rejected a similar argument in Montano and concluded that such arguments will take the courts outside the confines of the contractual expectation and into the realm of actuarial analysis. See Montano, 2003-NMCA-066, ¶¶ 63-64. The Montano court held that the inherent or hidden actuarial analysis supporting separate premiums is not an issue of ambiguity, but rather an issue of insurer fraud or deceit. See id. at ¶ 66. It also held that Plaintiff's argument that Defendant is dishonest, and is robbing the insured of the benefit of what he or she is paying for, is a matter that can be reviewed by an insurance superintendent under the insurance code. See id. Here, Plaintiffs paid a premium of $120.20 in 1997 when they insured two vehicles, and the premium remained the same when they added a third vehicle to the policy. Therefore, Plaintiffs could not have any reasonable expectation of additional stacked coverage because Plaintiff paid roughly twice the amount of a single premium and got coverage for two vehicles. Indep. Appliance & Refrigeration Serv., Inc., 278 F.3d at 1106. The Court must refer to what the hypothetical reasonable insured would glean from the wording of the policy and the kind of insurance at issue, rather than how the particular insured who happens to buy the policy might understand it. See Rodriguez, 118 N.M. at 133, 879 P.2d at 765.

Plaintiffs argue that the language of the policy is confusing and ambiguous in that the general combining limits provision in AU2207-2 states that the coverage limits shown on the declarations page for the automobile involved in the accident applies, and no UM bodily-injury coverage limit appears next to any particular auto on the declarations page. The Court concludes, however, that based on the holding in Montano, Plaintiffs should not have any reasonable expectation of four separate and stackable coverage limits because unambiguous limitations on stacking in the Amendatory Endorsement and the Important Notice do not create such an expectation. See Montano, 2003-NMCA-066 ¶ 45 (holding that the manner in which declarations pages set out premiums and coverages does not create a reasonable expectation that one premium has purchased four separate bodily-injury coverages or limits that can be stacked). The format in which Allstate has set the uninsured motorist bodily-injury coverage and premium conforms to the notion that the insurance coverage is tied to the insured and not to any particular vehicle or vehicles. See id.

Documents such as standard form insurance policies tend to have some ambiguities, and litigants can almost always argue for better explanatory language. However, a reasonable insured should have understood the documents describing the stacking limitations to two vehicles. See id. at ¶ 47. Here, Defendant changed the policy and provided the UM bodily-injury coverage for the whole policy, rather than per vehicle, following the Rodriguez principle. Further, the Amendatory Endorsement sent in 1997 is unequivocal. See Indep. Appliance & Refrigeration Serv., Inc., 278 F.3d at 1107. Plaintiffs argue that Defendant's 1997 policy does not plainly notify the insured that uninsured motorist coverages cannot be

stacked and, therefore, it did not satisfy the second prong of Rodriguez.  (Plf's. Mem. In Supp. Summ. J. on Uninsured Motorist Stacking at 19-21).  However, the policy, including the Amendatory Endorsement and Important Notice, unambiguously set out the insured to stack two, but no more than two, uninsured motorist bodily-injury limits.  See Montano, 2003-NMCA-066 ¶ 44.

Plaintiffs also argue that the UM stacking provision is not conspicuous.  (Plf's. Mem. In Supp. Summ. J. on Uninsured Motorist Stacking at 23).  However, Plaintiffs admit that an adjuster from Allstate stated that they have one UM coverage, but could stack two UM coverages.  (Plf's Mem. in Supp. Summ. J. on UM stacking at 23).  Defendant sent the Important Notice, which notifies the insured of "Changes to Uninsured Motorist Insurance." Further, the Policy Endorsement advises:  "The following endorsement changes your policy. Please read this document carefully and keep it with your policy."  (Ex. Group 3). Portions of Section III of this endorsement—**"Uninsured Motorists Insurance (Coverage SS)," "Limits of Liability,"** and **"Bodily Injury Caused by Uninsured Motorists"**—were in bold print and, therefore, were conspicuous.

Plaintiffs argue that the New Mexico Supreme Court favors stacking based upon public policy considerations, citing Ponder v. State Farm Mut. Auto. Ins. Co. 129 N.M. 698, 12 P.3d 960 as the controlling law.  (Plfs' Mem. In. Supp. Summ. J. on Uninsured Motorist Stacking at 18). Their reliance on Ponder is misplaced, however, because Ponder addresses a different issue.  In Ponder, the issue was whether or not a married minor that moved out of the parents' home remained as a Class I insured.  See id.  The Court held that the surrounding

circumstances created an ambiguity and, therefore, the minor would maintain the same type of UM coverage as the Class I insured. See id. The Montano court concluded that public policy will not be served by allowing stacking of all vehicles covered, regardless of what the language of the policy says. The court reasoned that a blanket rule of allowing stacking counters public policy because it raises premiums and, in the end, consumers who do not prefer stacking end up paying more. See Montano, 2003-NMCA-066, ¶ 77.

### E.   Stacking of Medical Payment Coverage

The Legislature mandated uninsured motorist coverage in NMSA 1978, § 66-5-301(B). However, there is no such mandate for medical coverage, and it exists only by virtue of contracts freely entered into between the insured and insurance company. Therefore, there is no public policy or statute requiring stacking of medical payments coverage. See Sanchez v. Herrera, 109 N.M. 155, 158, 783 P.2d 465, 468 (1989). As such, UM coverage is not completely analogous to the medical payments coverage. See id. New Mexico law resorts to traditional methods of contract interpretation in case of stacking of medical payments. See id. Two principles apply when analyzing stacking questions in the absence of a statute: (1) an insurance company has a duty specifically to exclude stacking if the policy as a whole encourages the insured to expect coverage, and (2) such exclusionary provisions will be enforced only if they are both unambiguous and not in conflict with statutory public policy. See id. Separate premiums give rise to expectations of greater coverage. See id. at 159. However, if the policy clearly and unambiguously excludes stacking of medical coverage, limitation on stacking is allowed. See id.

The Sanchez court held that if the relevant provisions of insurance policy create an ambiguity or a reasonable expectation that coverage will be stacked, the courts should interpret the contract against the insurer. See id. If not, the contract should be interpreted according to its plain meaning. See id. When the relevant portions of policy clearly indicate that medical coverage is only for the vehicle described in the policy, expectation of the insured that separate premiums give rise to expectations of greater coverage are unreasonable. See id at 159.

In Vigil v. Cal. Casualty Ins. Co., 112 N.M. 67, 811 P.2d 565 (1991), the court allowed stacking because the "Limits of Liability" clause did not limit the coverage amount to a particular vehicle or a person. Further, the insurer provided the figure for medical payment coverage three times on the declarations page for each person. The Vigil court held that the policy was ambiguous and stacking was permitted. See id. at 69.

Unlike Vigil, in the present case, the declaration pages do not list three amounts as medical payments coverage for each person. The policy clearly excludes stacking of medical payments.

Allstate clearly stated in its "Limits of Liability" clause:

> The medical payments limit applies to each insured auto as shown on the declarations page. The insuring of more than one person or auto under this policy won't increase our limit beyond the amount shown for any one auto, even though a separate premium is charged for each auto. The limit also won't be increased if you have other auto insurance policies that apply.

(Ex. A - Def. Mot. to Dismiss - p. 12). As such, the Court concludes that the exclusionary language is clear and a reasonable interpretation will not allow stacking of medical payments

coverage. Therefore, Defendant is entitled to summary judgment on the issue of stacking of medical payments.

### F.     Unfair Practices (Statutory) Claims

The New Mexico Unfair Practices Act, N.M. STAT. ANN. §§ 57-12-1-22 and the New Mexico Unfair Insurance Practices Act N.M. STAT. ANN. §§ 59A-16-1-30 prohibit misleading or deceptive communications to consumers. Using exaggeration, innuendo, or ambiguity as to a material fact, or failing to state a material fact, constitutes an unfair practice. N.M. STAT. ANN. § 57-12-2 (D)(14). The Unfair Practices Act applies to all misleading or deceptive statements whether intentional or unintentional. See Ashlock v. Sunwest Bank of Roswell, 107 N.M. 100, 753 P.2d 346 (1988), overruled on other grounds by Gonzales v. Surgidev Corp., 120 N.M. 133, 899 P.2d 576 (1995)). The Unfair Insurance Practices Act places similar restrictions on trade practices within the insurance business. No person may "misrepresent the benefits advantages, conditions or term of any policy," N.M. STAT. ANN. § 59A-16-4(A), or "fail to disclose material facts reasonably necessary to prevent other statements made from being misleading." N.M. STAT ANN. § 59A-16-4. Plaintiffs allege that Defendant misrepresented the benefits and terms of the policy. See id. However, as explained earlier, Defendant provided the Amendatory Endorsement and the Important Notice that explained the limits of coverage. Plaintiffs also allege that Defendant failed to effectuate a prompt, fair, and equitable settlement and forced the insured to litigation. There is evidence in the record that Defendant paid the contractually-agreed policy coverage. As Plaintiffs did not bring forward any evidence of misleading or deceptive statements made by Defendant,

-17-

or any of its agents either intentionally or unintentionally, Defendant is entitled to summary judgment on this claim.

### G.     Bad Faith Claim

New Mexico recognizes implied covenant of fair dealing and good faith between the insured and insurer. See State Farm Gen. Ins. Co. v. Clifton, 86 N.M. 757, 759, 527 P.2d 798, 800 (1974). Bad faith has been defined as any frivolous or unfounded refusal to pay a claim is bad faith. See id.; Jessen v. Nat'l Excess Ins. Co., 108 N.M. 625, 776 P.2d 1244 (1989). Unfounded means "reckless disregard" in which the insurer "'*utterly* fails to exercise care for the interests of the insured in denying or delaying payment on an insurance policy.'" Jackson Nat'l Life Ins. Co. v. Receconi, 113 N.M. 403, 419, 827 P.2d 118, 134 (1992). "It means an utter or total lack of foundation for an assertion of nonliability—an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim." Id. "It is synonymous with the word with which it is coupled: 'frivolous.'" Id. The concept of bad faith or failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy. See Charter Servs., Inc. v. Principal Mut. Life Ins. Co., 117 N.M. 82, 87, 868 P.2d 1307, 1312 (1994). As stated earlier, Defendant does not have a duty under the policy to stack all of Plaintiffs' vehicles. In the present case, there existed legitimate questions regarding the amount of coverage. Plaintiffs have failed to meet their burden of presenting evidence sufficient to defeat summary judgment on the issue of whether the insurer's failure to pay the claim was malicious or done in bad faith. See United Nuclear Corp. v. Allendale Mut. Ins. Co., 103

N.M. 480, 485, 709 P.2d 649, 654 (1985); see also Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co., 102 N.M. 28, 690 P.2d 1022 (1984) (concluding that the insurer is not liable to the insured for excesses caused by its failure to settle when it acted honestly after competent investigation and makes a decision to proceed to trial).  According, Defendant is entitled to summary judgment on the issue of bad faith.

### H. Certification

As the New Mexico Court of Appeals decided the present issue, there is no need for this Court to certify the issue to the New Mexico Supreme Court.  Therefore, the Court denies the motion for certification as moot.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendant's ***Motion to Dismiss*** and ***Allstate's Motion for Summary Judgment on UM/UIM Stacking, Bad Faith and Statutory Violations Claims***, and denies ***Plaintiffs Greenhaus' Motion for Summary Judgment on the Issue of Uninsured Motorist Stacking*** and ***Plaintiffs Greenhaus' Motion to Certify to the New Mexico Supreme Court***.  Accordingly, the Court directs that all of Plaintiffs' claims, except negligence [Count VI], be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that Defendant's ***Motion to Dismiss*** [Doc. No 10] is **GRANTED** as to Plaintiffs' claims of intentional infliction of emotional distress and Defendant's limitation on medical payment coverage.

**IT IS FURTHER ORDERED** that *Allstate's Motion for Summary Judgment on UM/UIM Stacking, Bad Faith and Statutory Violations Claims* [Doc. No. 50] is **GRANTED**.

**IT IS FURTHER ORDERED** that *Plaintiffs Greenhaus' Motion for Summary Judgment on the Issue of Uninsured Motorist Stacking* [Doc. No. 34] is **DENIED**.

**IT IS FURTHER ORDERED** that *Plaintiffs Greenhaus' Motion to Certify to the New Mexico Supreme Court* [Doc. No. 36] is **DENIED**.

**IT IS FURTHER ORDERED** that Counts I, II, III, IV, and V of Plaintiffs' Complaint are **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 31st day of August 2003, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
*United States District Judge*